## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                           No. CIV 05-1263 MV/DJS

$148,840.00 IN UNITED STATES
CURRENCY,

        Defendant,

DAVID AUSTIN,

        Claimant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the United States' Motion to Dismiss/Strike

Claim and Answer for Lack of Article III Standing or Motion for Summary Judgment, filed

September 28, 2006, **[Doc. No. 28]**.[1]  The Court, having considered the motions, briefs, relevant

law and being otherwise fully informed, finds that the motion will be **GRANTED**.

## BACKGROUND

This is a civil action brought by the United States of America, pursuant to

---

[1]  In rem forfeiture actions that arise from a federal statute are governed by the
Supplemental Rules for Certain Admiralty and Maritime Claims.  Rule G of the Supplemental
Rules for Certain Admiralty and Maritime Claims, which took effect December 1, 2006, states
that "[a]t any time before trial, the government may move to strike a claim or answer . . . because
the claimant lacks standing."  Fed. R. Civ. P. Supp. Rule G(8)(c)(i)(B).  The motion to strike
"must be decided before any motion by the claimant to dismiss the action and may be presented as
a motion for judgment on the pleadings or as a motion to determine after a hearing or by summary
judgment whether the claimant can carry the burden of establishing standing by a preponderance
of the evidence." *Id.* at (c)(ii)(A) & (B).

21 U.S.C. § 881(a)(6), seeking the forfeiture of currency that the United States alleges is

connected to the drug trade. On June 25, 2005, a vehicle driven by Claimant David Austin was

stopped by Bernalillo County Deputy Sheriff Peter Roth for traveling 65 mph in a 45 mph

construction zone on westbound Interstate 40 near Albuquerque, New Mexico.[2]  At Officer

Roth's request, Mr. Austin produced a California driver's license and a rental contract from Hertz

car rental in Philadelphia, Pennsylvania.  In response to Officer Roth's inquiries, Mr. Austin stated

that he had flown from California to Philadelphia the day before to visit a friend, had then driven

to Illinois to visit another friend, and was on his way back to California.

Deputy Roth, who found this travel itinerary suspicious, requested consent to search

Mr. Austin's vehicle.  When Mr. Austin refused consent, Deputy Roth requested that a K-9 unit

be dispatched to the site of the traffic stop.  While waiting for the K-9 unit to arrive, Mr. Austin

told Deputy Roth that he had traveled to Philadelphia to visit a "good buddy" named Lenny.  Mr.

Austin, however, did not know Lenny's last name.  In response to questions regarding his

employment, Mr. Austin stated that he had a kitchen refurbishing business and estimated that it

would cost about $300.00 to refurbish Officer Roth's kitchen.  Both these statements increased

Officer Roth's suspicions.

When the K-9 unit arrived, the K-9 dog alerted positively for the odor of an illegal

controlled substance on a cooler and a suitcase in the car's trunk.  Officer Roth subsequently

searched the cooler and the suitcase.  In the cooler, Officer Roth found a ziplock bag containing

_____

[2]  On the United States' Motion for Summary Judgment, the facts must be taken in the
light most favorable to Plaintiff; accordingly, in the recitation of the facts, the Court will describe
only the undisputed facts and the facts as supported by the Plaintiff's evidence.  The Court notes,
however, that very few of these facts are relevant to the standing inquiry.

six bundles of United States currency wrapped in foil.  The currency, which was in various denominations, totaled $148,840.00.  Claimant declined to provide any information regarding the source of the currency but did assert that the currency belonged to him.

The United States subsequently sought forfeiture of the currency under 21 U.S.C. § 881(a)(6) on the grounds that it was furnished or intended to be furnished in exchange for a controlled substance, or constitutes proceeds traceable to such an exchange, or was used or intended to be used to facilitate a violation of the Controlled Substances Act.  Mr. Austin contested the forfeiture on the grounds that he was the owner of the currency.  In his answer, Mr. Austin asserted as an affirmative defense that he was an "innocent owner."

The United States deposed Mr. Austin in this action on May 24, 2006. At that deposition, Mr. Austin asserted that he was the owner of the currency but repeatedly invoked his Fifth Amendment privilege against self-incrimination in response to any questions regarding his ownership of the currency, including questions regarding the source of the currency, the packaging of the currency, how the currency got into the cooler and whether the currency represented the proceeds of illegal drug trafficking.  Mr. Austin also invoked his Fifth Amendment right in response to questions about his sources of income, his employment history, where he had previously lived, and his travel itinerary and activities while in Philadelphia the day prior to the traffic stop at which the currency was seized.  Following the deposition, Mr. Austin withdrew his innocent owner affirmative defense.

In the instant motion, the United States seeks dismissal of Mr. Austin's claim or, in the alternative, summary judgment on the grounds that Mr. Austin lacks Article III and statutory standing to contest the forfeiture.

3

## **LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Jones v. Kodak Medical Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999). Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). There is no requirement that the moving party negate the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citations omitted). Rather than "merely show there is some metaphysical doubt as to the material facts," the nonmoving party is required to "go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial." *Kaus v. Standard Ins. Co.*, 985 F. Supp 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict

for that party.  *See Anderson*, 477 U.S. at 248.   Upon a motion for summary judgment, the Court

"must view the facts in the light most favorable to the nonmovant and allow the nonmovant the

benefit of all reasonable inferences to be drawn from the evidence."  *Kaus*, 985 F. Supp at 1281.

## DISCUSSION

Whether a claimant has Article III standing is "the threshold question in every federal case,

determining the power of the court to entertain the suit."  *Warth v. Seldin*, 422 U.S. 490, 498

(1975).  The question is whether the claimant has "alleged such a personal stake in the outcome of

the controversy" as to warrant his invocation of federal-court jurisdiction and to justify exercise of

the court's remedial powers on his behalf.  *Baker v. Carr*, 369 U.S. 186, 204 (1962); *see also*

*Sierra Club v. Morton*, 405 U.S. 727, 731 (1972) (a litigant must possess "a sufficient stake in an

otherwise justiciable controversy to obtain judicial resolution of that controversy").  In a

forfeiture case, a claimant's Article III standing "turns on whether the claimant has a sufficient

ownership interest in the property to create a case or controversy." *United States v. One Lincoln*

*Navigator 1998*, 328 F.3d 1011, 1013 (8th Cir. 2003); *see also United States v. One 18th*

*Century Colombian Monstrance*, 797 F.2d 1370, 1374-75 (5th Cir. 1986) (a claimant must show

at least a facially colorable interest in the proceedings sufficient to satisfy the case-or-controversy

requirement).  An ownership interest "may be evidenced in a number of ways including showings

of actual possession, control, title and financial stake." *One Lincoln Navigator 1998*, 328 F.3d at

1013 (quoting *United States v. One 1945 Douglas C-54 (DC-4) Aircraft*, 647 F.2d 864, 866 (8th

Cir. 1981)).

The burden of establishing standing to contest a forfeiture rests upon the claimant.

*Kadonsky v. United States*, 216 F.3d 499, 508 (5th Cir. 2000).  Since standing is not a mere

pleading requirement but, rather, is an indispensable part of a claimant's case, the alleged

ownership interest in the seized property must be supported in the same way as any other matter

on which the claimant bears the burden of proof.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

561 (1992).  In other words, the claimant must move forward "with the manner and degree of

evidence required at the successive stages of the litigation." *Id*.  The Supreme Court has stated

the requirement to plead and prove standing as follows:

> At the pleading stage, general factual allegations of injury resulting from the
> defendant's conduct may suffice, for on a motion to dismiss we presume that
> general allegations embrace those specific facts that are necessary to support the
> claim. In response to a summary judgment motion, however, the plaintiff can no
> longer rest on such mere allegations, but must set forth by affidavit or other
> evidence specific facts which for purposes of the summary judgment motion will be
> taken as true. And at the final stage, those facts (if controverted) must be
> supported adequately by the evidence adduced at trial.

*Lujan*, 504 U.S. at 562 (internal citations and quotations omitted).

At the pleading stage, a simple claim of ownership is sufficient to establish standing to

contest a forfeiture. *See, e.g., United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491,

498-99 (6th Cir. 1998) ("In a forfeiture proceeding, a claim of ownership will establish a

claimant's standing to challenge the forfeiture of his property.").  At the summary judgment stage,

however, the claimant must support his claim of ownership with some evidence of his interest in

the *res*.  *See $138,381.00 in U.S. Currency*, 240 F.Supp.2d at 231 ("When the government moves

for summary judgment in a forfeiture proceeding, that claim of ownership will be scrutinized in a

manner consistent with the principles of Rule 56 of the Federal Rules of Civil Procedure.");  *U.S.
v. $321,470.00, U.S. Currency*, 874 F.2d 298, 303 (5th Cir. 1989) ("property may be forfeited ...

if the only claimant is unable or unwilling to provide evidence supporting his assertion of an

interest in the property [sufficient to establish standing]"); *Kadonsky*, 216 F.3d at 508

("unsupported assertion of ownership is insufficient to establish standing" to contest a forfeiture).

In the Tenth Circuit, "an allegation of ownership and some evidence of ownership are together

sufficient to establish standing to contest a civil forfeiture."[3] *Kadonsky v. U.S.*, 3 Fed.Appx. 898

(10th Cir. 2001) (quotations and citations omitted); *see also U.S. v. $14,344.50 in U.S. Currency*,

49 Fed.Appx. 207 (10th Cir. 2002)("[A]n allegation of ownership and some evidence of

ownership are together sufficient [to establish standing].")(citations omitted).

　　　　The requirement that a claimant provide some evidence in support of his claim of

ownership at the summary judgment stage is not altered by the assertion of a claimant's Fifth

Amendment rights. *United States v. 4003-4005 5th Ave.*, 55 F.3d 78, 83 (2d Cir. 1995) ("[T]he

claim of privilege will not prevent an adverse finding or even summary judgment if the litigant

does not present sufficient evidence to satisfy the usual evidentiary burdens in the litigation.").  It

is a claimant's right to invoke his Fifth Amendment privilege, however, a "party who asserts the

privilege against self-incrimination must bear the consequence of lack of evidence." *United States*

*v. Taylor*, 975 F.2d 402, 404 (7th Cir.1992).  As the Supreme Court has explained,

> while the assertion of the Fifth Amendment privilege against compulsory
> self-incrimination may be a valid ground upon which a witness . . . declines to
> answer questions, it has never been thought to be in itself a substitute for evidence

---

　　　[3]  In his response to this motion, Mr. Austin relies heavily upon case law from other
circuits questioning whether evidence to support a claim of ownership is necessary to establish
Article III standing in a civil forfeiture action.  *See, e.g., United States v. $557,933.89, More or
Less, in U.S. Funds*, 287 F.3d 66, 79 (2d Cir. 2002) (in a civil forfeiture action the claimant need
not produce any evidence at all, including evidence supporting his ownership interest, until after
the government meets its burden of proof).  This interpretation, however, has not been adopted by
the Tenth Circuit.  Furthermore, this view appears to be contrary to Rule G(8) of the
Supplemental Rules for Certain Admiralty and Maritime Claims, which explicitly permits the
government to challenge a claimant's standing via a summary judgment motion.

that would assist in meeting a burden of production. We think the view of the
Court of Appeals would convert the privilege from the shield against compulsory
self-incrimination which it was intended to be into a sword whereby a claimant
asserting the privilege would be freed from adducing proof in support of a burden
which would otherwise have been his. None of our cases support this view.

*United States v. Rylander*, 460 U.S. 752, 758, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983).

In this case, Mr. Austin has consistently maintained that he is the owner of the currency
but has asserted his privilege against self-incrimination rather than provide any evidence in
support of his claim of ownership. While an unsupported assertion of ownership may be sufficient
to establish standing at the pleading stage, it is not sufficient to withstand a motion for summary
judgment. Absent any evidence in support of his claim of an ownership interest in the currency,
Mr. Austin does not have Article III standing to challenge the forfeiture of these funds.[4]

## CONCLUSION

**IT IS THEREFORE ORDERED** that United States' Motion to Dismiss/Strike Claim
and Answer for Lack of Article III Standing or Motion for Summary Judgment, filed September
28, 2006, **[Doc. No. 28]**, is hereby **GRANTED**. Summary judgment is granted in favor of the
United States on the issue of whether Claimant David Austin has Article III standing to challenge
the forfeiture of the $148,840.00.

**IT IS FURTHER ORDERED** that Claimant David Austin's Motion to Withdraw Fourth
Affirmative Defense, filed September 19, 2006, **[Doc. No. 24]**, is hereby **GRANTED**.

**IT IS FINALLY ORDERED** that the United States' Motion to Compel Discovery, filed
September 11, 2006, **[Doc. No. 21]**, Claimant David Austin's Motion to Suppress Evidence, filed

---

[4] Because the Court finds that Claimant does not have Article III standing, the Court need
not address the United States' argument that Claimant also lacks statutory standing.

8

September 14, 2006, **[Doc. No. 22]**, Claimant David Austin's Motion to Seal, filed

September 25, 2006, **[Doc. No. 26]**, and the United States' Motion for Summary Judgment, filed

November 20, 2006, **[Doc. No. 37]**, are hereby **DENIED as moot**.

      Dated this 30th day of March, 2007.

                                    MARTHA VAZQUEZ
                                    CHIEF UNITED STATES DISTRICT JUDGE

<u>Attorney for United States</u>:
   Stephen R. Kotz

<u>Attorneys for Claimant</u>:
   Richard M. Barnett
   Timothy M. Padilla